UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/11/18

------------------------------------X

CATHY ROUSEY,                      :

               Plaintiff,    :     16 Civ. 9500 (HBP)

  -against-                       :     OPINION
                                         AND ORDER
COMMISSIONER OF SOCIAL SECURITY,   :

             Defendant.    :

------------------------------------X

       PITMAN, United States Magistrate Judge:

## I. Introduction

       Plaintiff brings this action pursuant to section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). The parties have consented to my exercising plenary jurisdiction in this matter pursuant to 28 U.S.C. § 636(c) (Docket Item ("D.I.") 17). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (D.I. 19, 23). For the reasons set forth below, plaintiff's motion for judgment on the pleadings is granted to the extent of remanding this matter for further proceedings pursuant to sentence four of 42 U.S.C. §

405(g) and the Commissioner's motion for judgment on the pleadings is denied.

II.   <u>Facts</u>[1]

   A.  <u>Procedural Background</u>

      Plaintiff filed an application for DIB in July 2013, alleging that she became disabled on March 22, 2012 due to "two slipped discs 1-4 and 1-5," severe arthritis, sciatica, arthritis of all joints and hearing loss (Tr. 13, 75-76, 86). The claims were initially denied on October 10, 2013 (Tr. 86-94), and plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 95-99). ALJ Michael Rodriguez held a hearing by videoconference on January 20, 2015 during which plaintiff and a vocational expert testified (Tr. 36-74). On May 1, 2015, the ALJ issued a decision finding that plaintiff was not disabled (Tr. 13-31). This decision became the final decision of the Commissioner on October 17, 2016 when the Appeals Council denied plaintiff's request for review (Tr. 1-5).

---

[1]I recite only those facts relevant to my review. The administrative record that the Commissioner filed pursuant to 42 U.S.C. § 405(g) (<u>See</u> Notice of Filing of Administrative Record, dated July 6, 2016 (Docket Item 18) ("Tr.")) more fully sets out plaintiff's medical history.

B.  Social Background

Plaintiff was born in December 1963 and was forty-nine
years old as of the date of her DIB application (Tr. 75).
Plaintiff has a college degree in social work, served in the
military as a cable installer, a training officer, a child
protective specialist and most recently had worked as a budget
and administrative specialist at the Department of Veterans
Affairs (the "VA") (Tr. 45-46, 48-51, 193-204).  Plaintiff
retired from the VA in February 2012 (Tr. 171, 291).  Plaintiff
lives in a single-family house with her father and her two adult
sons, who were twenty-one and twenty-four years old as of the
date of the hearing (Tr. 41-44).

In a "function report" submitted to the Social Security
Administration by plaintiff in September 2013, plaintiff stated
that she was disabled due to chronic illnesses that included
arthritis, carpal tunnel syndrome, sciatica with two slipped
discs, numbness in her left arm, pain in her shoulders, feet and
hands, hearing loss, depression and due to stress (Tr. 176-88).
Plaintiff reported that she suffered from depression and felt
stressed but also stated that she had not experienced anxiety
attacks (Tr. 186-87).  She reported that "stress affects [her]
whole body vision, nerves, bones, movements & physical appearance

[and] gives [her] migraine headaches" (Tr. 184). She stated that she did not participate in social activities on a regular basis because she was embarrassed about not being able to walk without complaining, but that she spoke with her mother and grandmother over the telephone once or twice a week and shopped in stores once or twice a week for fifteen to twenty minutes (Tr. 180-81). Plaintiff stated that she had no problems with her attention or memory, could finish what she started, could follow spoken and written instructions and had no problems getting along with bosses or people in authority (Tr. 183-84)

C. Medical Background

Although plaintiff applied for DIB on the basis of both her physical and mental impairments, on this appeal, plaintiff only challenges the ALJ's findings with respect to her mental health impairments. Therefore, only the facts concerning plaintiff's mental health history are discussed in detail below.

1. Psychologist Dr. Melissa Halligan

a. Treatment by Dr. Halligan Before
Plaintiff's Alleged Onset Date

On January 11, 2012, plaintiff saw psychologist Dr. Melissa Halligan at the VA for continued individual therapy (Tr.

4

277-79). Dr. Halligan reported that plaintiff was "quite tearful [when] discussing the financial and work stressors that [were] impacting her recently," including foreclosure proceedings directed at her home and pressure to meet the deadlines of heavy workloads (Tr. 278). A mental status exam was normal except for a dysphoric mood and constricted affect (Tr. 277-78). Plaintiff had good insight, judgment and impulse control and Dr. Halligan diagnosed plaintiff with adjustment disorder (Tr. 277-78).

On January 30, 2012, plaintiff saw Dr. Halligan again and reported that she was continuing to deal with the ongoing stress of foreclosure proceedings (Tr. 268-69). A mental status exam showed that plaintiff had a dysphoric mood, had a normal affect and had good insight, judgment and impulse control (Tr. 269).

Plaintiff missed an appointment with Dr. Halligan on February 13, 2012 because she forgot about it (Tr. 260). Plain-tiff missed an appointment on February 22, 2012 because it was her last day at work and she was clearing out her desk (Tr. 260).

### b. Treatment by Dr. Halligan
#### Following Alleged Onset Date

Plaintiff saw Dr. Halligan again in September 2013 with complaints of severe depression and stress related to chronic

pain and financial distress (Tr. 359-62).  Dr. Halligan noted that plaintiff "reports passive wishes that she would die naturally but . . . denies any plan or intention to harm or kill herself" (Tr. 360).  Plaintiff scored in the severely depressed range on a PHQ-9 questionnaire[2] (Tr. 360-62).  Dr. Halligan diagnosed plaintiff with depression (Tr. 360-61).

On October 23, 2013, plaintiff met with Dr. Halligan for therapy and reported stress resulting from a recent car accident and from financial problems (Tr. 348-49).  A mental status exam showed that plaintiff had a dysphoric mood, good insight, judgment and impulse control and that there was no evidence of suicidal ideation (Tr. 348-49).  Dr. Halligan diagnosed plaintiff with depression (Tr. 349).

c.  Dr. Roland Larkin

On October 23, 2013, plaintiff saw Dr. Roland Larkin at the VA for depression (Tr. 343).[3]  Plaintiff told Dr. Larkin that

---

[2]The PHQ-9 is a questionnaire used to assess the severity of a patient's depression.  A score of 15 to 19 indicates moderately severe depression; a score of 10 to 14 indicates moderate depression; and a score of 5 to 9 indicates mild depression.  See PHQ-9 Questionnaire for Depression Scoring and Interpretation, University of Michigan,  http://www.med.umich.edu/1info/-FHP/practiceguides/depress/score.pdf (last visited January 10, 2018).

[3]It is not clear what Dr. Larkin's credentials are in the
(continued...)

she had seen Dr. Halligan on and off for approximately six years, that she had a history of sexual abuse and that she had never taken any psychotropic medications (Tr. 344-45). Plaintiff stated that she felt depressed, hopeless and overwhelmed and had poor energy, motivation and sleep (Tr. 344). Plaintiff denied suicidal ideation, severe emotional distress, severe anxiety and panic symptoms (Tr. 340-41). Plaintiff complained of physical pain, insomnia and hopelessness and/or demoralization and had minimal indications of impulsive behavior (Tr. 340-41).

A mental status exam showed that plaintiff had a cooperative attitude, calm motor activity, regular speech, intact thought processes, unremarkable thought content, fair insight, appropriate but tearful affect, grossly intact memory and cognitive function, intact abstraction, judgment and appetite (Tr. 346). Dr. Larkin diagnosed plaintiff with major depressive disorder, assessed a GAF score[4] of 58, indicating moderate symp

---

[3](...continued)
psychology field. His notes are signed "Roland M Larkin, PhD NP/Psychiatry" (Tr. 342, 347).

[4]"The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n.1 (2d Cir. 2008), quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, at 32 (4th ed. 2000)). A score of 41-50 indicates serious symptoms, a score of 51-60 indicates moderate symptoms and a score of 61-70 indicates some mild symptoms or
(continued...)

toms, prescribed fluoxetine, i.e., Prozac, and recommended that plaintiff continue individual therapy (Tr. 346-47).

d. Dr. Jennifer Reich
and Dr. Uri Napchan

Plaintiff's primary care physician, Dr. Jennifer Reich, and her pain management physician, Dr. Uri Napchan, also monitored plaintiff's depression during visits in 2013 and 2014.

In August and September 2013, Dr. Napchan and/or Dr. Reich noted that plaintiff's judgment, insight, memory, mood and affect were normal (Tr. 415-16, 426-27, 434).

In October 2013, Dr. Reich noted that plaintiff's judgment, insight, mood and affect were normal with no anxiousness or suicidal ideation (Tr. 411-13).

In November 2013, Dr. Reich noted that plaintiff had started taking Prozac on October 23, 2013 and was "starting to feel better at [that] time" (Tr. 401-03).

In December 2013, Dr. Reich noted that plaintiff was "under excessive amounts of stress," was following up with a

_____

[4](...continued)
some difficulty in social or occupational functioning, but generally functioning "pretty well." See Global Assessment of Functioning, New York State Office of Mental Health, available at https://www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_ functioning.pdf (last visited January 10, 2018).

psychiatrist at the VA and had recently started taking Prozac (Tr. 398-99).

In February 2014, Dr. Reich noted that plaintiff had normal insight, mood, affect and judgment (Tr. 388). She also noted that plaintiff was receiving therapy at the VA and was "on Prozac and seemed to be doing well" (Tr. 388-89). In March 2014, Dr. Reich again noted plaintiff was "on Prozac and [was] doing well" (Tr. 377).

## 2. Consultative Internal Medicine Evaluation: Dr. Gilberti Jenouri

On October 2, 2013, internal medicine physician Dr. Gilberti Jenouri examined plaintiff at the request of the New York State Division of Disability Determination (Tr. 285). Plaintiff reported that she had a history of depression, back problems, hearing loss and neck problems (Tr. 285). Plaintiff said that she cooked two to three times a week, cleaned one to two times a week, shopped once a week but did not do laundry (Tr. 285). She did not shower but bathed three to four times a week, watched television and socialized with friends (Tr. 286). Dr. Jenouri diagnosed plaintiff with several physical impairments and a history of depression (Tr. 288).

3.  Consultative Psychiatric
    Evaluation: Dr. Leslie Helprin

On October 2, 2013, Dr. Leslie Helprin, a psychologist, examined plaintiff and prepared a consultative psychiatric evaluation (Tr. 291).  Plaintiff told Dr. Helprin that she saw a psychologist at the VA once a week and had been seeing a psychologist since 2007 or 2008 (Tr. 291).  Plaintiff complained of symptoms including waking up twice at night, loss of appetite, crying spells and social withdrawal (Tr. 291).  She denied suicidal thoughts and suicide attempts but said that she sometimes felt that she did not want to live (Tr. 291).  She said that she occasionally felt nervous but denied significant symptoms of anxiety, mania, thought disorder or cognitive symptomatology (Tr. 291).  She reported she could drive, dress, bathe, cook and clean, but did not do laundry and needed help with grocery shopping due to back pain (Tr. 293).  She also said she needed help with money management because she sometimes forgot when to pay bills (Tr. 293).  Plaintiff did not socialize with friends in person but talked to her best friend in Georgia over the telephone and reported that her only leisure interest was watching TV (Tr. 293).

Dr. Helprin examined plaintiff and found that plaintiff was dressed appropriately, her posture and motor behavior was

normal, her speech was fluent and clear with adequate expressive and receptive language skills and her thought processes were coherent and goal directed with no evidence of hallucinations, delusions or paranoia (Tr. 292). Dr. Helprin found that plaintiff had a dysphoric affect and her mood was dysthymic with "some crying" (Tr. 292). Plaintiff's attention and concentration were intact and her insight and judgment were good (Tr. 293). However, plaintiff's recent and remote memory skills were "[i]mpaired due to cognitive deficits. She recalled 3 of 3 objects immediately, and none after a five-minute time delay" (Tr. 293). Plaintiff's intellectual skills were in the below average range (Tr. 293).

Dr. Helprin diagnosed plaintiff with adjustment disorder with depressed mood, moderate episodic, and an amnestic disorder, not otherwise specified ("NOS") (Tr. 294). Dr. Helprin concluded that plaintiff

> evidences no limitations in her ability to follow and understand simple directions and instructions, cognitively perform simple tasks and complex tasks independently, and maintain attention and concentration, though with moderate short-term memory limitations. She evidences no limitations in her ability to maintain a regular schedule as it pertains to psychiatric and cognitive outlooks, make appropriate decisions, and relate adequately with [those] whom she encounters. She evidences mild limitations in her ability to deal with stress.

> The results of the examination appear to be consistent
> with some secondary psychiatric problems, but in itself
> this does not appear to be significant enough to inter-
> fere with the claimant's ability to function on a daily
> basis.

(Tr. 293-94). Dr. Helprin recommended that plaintiff take an

antidepressant, continue psychological treatment and undergo a

medical evaluation "to determine if her medical conditions

preclude her from all work;" Dr. Helprin found that plaintiff's

prognosis was "good given the above treatments" (Tr. 294).

####    4.   Opinion by Non-Examining,
         Consulting Dr. L. Hoffman

In October 2013, at the request of the Social Security

Administration, Dr. L. Hoffman reviewed plaintiff's records,

including Dr. Helprin's report, and completed a psychiatric

review technique form (Tr. 79-86, 298). Dr. Hoffman opined that

plaintiff had an affective disorder that imposed mild restric-

tions on her activities of daily living, mild difficulties in

maintaining social functioning, mild difficulties in maintaining

concentration, persistence, or pace and that she had not experi-

enced any repeated episodes of decompensation of extended dura-

tion (Tr. 80).

D. Proceedings Before the ALJ

1. Plaintiff's Testimony

At the January 2015 hearing, plaintiff testified that she could not work because her "back would give out on [her]," she had carpal tunnel syndrome, arthritis and sciatica, and "[i]t was hard just trying to either sit and trying to maneuver throughout the day" (Tr. 52). She testified that her sons help her do all the household chores and shopping due to her pain, although she sometimes went grocery shopping with them (Tr. 62-63). Plaintiff spent her days sitting and watching TV, resting, or moving around the house to alleviate her pain (Tr. 62-63, 183).

Plaintiff testified that she first saw someone for mental health treatment around 2006 or 2007 in connection with her back pain and with sexual abuse she suffered while in the military (Tr. 56-57). She testified that she was currently in therapy at the VA where she was seeing a psychiatrist and a psychologist who had told her that she had depression and that they were examining her for possible PTSD (Tr. 56-57). She also testified that she was taking Prozac (Tr. 56-57).

2. Vocational Expert Testimony

Vocational expert Esperanzo DiStefano (the "VE")
testified at the hearing (Tr. 67-73). The ALJ asked the VE to
assume that plaintiff's

> residual functional capacity is sitting six hours out
> of an eight-hour workday, standing and walking two
> hours out of an eight-hour day, lifting and carrying
> ten pounds occasionally, five pounds more frequently.
> No upper or lower extremity push/pull activities, no
> ropes, ladders or scaffolds, no stairs or ramps, she'll
> do occasional balancing and stooping but no kneeling,
> crouching or crawling. Assume frequent overhead dis-
> tance and directional reaching, assume frequent use of
> the hands, bilateral manual dexterity, both fine and
> gross manipulation. She can have occasional explosure
> to background noise.

(Tr. 68-69). Given this residual functional capacity, the VE
testified that plaintiff could do her past work as an administra-
tive control specialist, DOT 209.362-026, which was a
semi-skilled, sedentary job, and as a medical transcriptionist,
DOT 203.582-058, which was a skilled, sedentary job (Tr. 68-69).

The expert testified that plaintiff's job opportunities
would diminish by half if plaintiff were also off-task for
fifteen percent of the time (Tr. 70). The expert testified that
if plaintiff were further limited to only the occasional use of
her hands, she could perform the three unskilled, sedentary jobs
of information clerk, DOT 237.367-022, with 953,980 jobs nation-
ally; callout operator, DOT 237.367-014, with 50,240 jobs nation-

ally; and semi-conductor bonder 726.685-066, with 22,270 jobs

nationally (Tr. 70-71).  The VE also testified that plaintiff's

employment opportunities for these positions would decrease by

half if she were also off-task for fifteen percent of the day

(Tr. 70-72).

III.  Analysis

    A.  Applicable Legal
       Principles

      1.  Standard of Review

The Court may set aside the final decision of the

Commissioner only if it is not supported by substantial evidence

or if it is based upon an erroneous legal standard.  42 U.S.C.

§ 405(g); Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per

curiam); Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012);

Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  Moreover,

the court cannot "affirm an administrative action on grounds

different from those considered by the agency." Lesterhuis v.

Colvin, 805 F.3d 83, 87 (2d Cir. 2015), quoting Burgess v.

Astrue, supra, 537 F.3d at 128.

The Court first reviews the Commissioner's decision for

compliance with the correct legal standards; only then does it

determine whether the Commissioner's conclusions were supported by substantial evidence. Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003), citing Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." Ellington v. Astrue, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (Marrero, D.J.). However, "where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Talavera v. Astrue, supra, 697 F.3d at 151, quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). Consequently, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam), quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982). Thus, "[i]n determining whether the agency's findings were supported by substantial evidence, 'the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn.'"  Selian v. Astrue, supra, 708 F.3d at 417 (citation omitted).

> 2.  Determination
>     of Disability

A claimant is entitled to DIB if the claimant can establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."[5] 42 U.S.C. § 423(d)(1)(A); see also Barnhart v. Walton, 535 U.S. 212, 217-22 (2002) (both the impairment and the inability to work must last twelve months).  In addition, to obtain DIB, the claimant must have become disabled before the date on which she was last insured.  See 42 U.S.C. §§ 416(i), 423(a); 20 C.F.R. §§ 404.130, 404.315; McKinstry v. Astrue, 511 F. App'x 110, 111 (2d Cir. 2013) (summary order), citing Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008).

---

[5]The standards that must be met to receive Social Security Insurance ("SSI") benefits under Title XVI of the Act are the same as the standards that must be met in order to receive DIB under Title II of the Act.  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, cases addressing the former are equally applicable to cases involving the latter.

The impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques," 42 U.S.C. § 423(d)(3), and it must be "of such severity" that the claimant cannot perform her previous work and "cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Whether such work is actually available in the area where the claimant resides is immaterial. 42 U.S.C. § 423(d)(2)(A).

In making the disability determination, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999), quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (internal quotation marks omitted).

In determining whether an individual is disabled, the Commissioner must follow the five-step process required by the regulations. 20 C.F.R. § 404.1520(a)(4)(i)-(v); see Selian v. Astrue, supra, 708 F.3d at 417-18; Talavera v. Astrue, supra, 697 F.3d at 151. The first step is a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §

18

404.1520(a)(4)(i). If she is not, the second step requires

determining whether the claimant has a "severe medically determi-

nable physical or mental impairment." 20 C.F.R.

§ 404.1520(a)(4)(ii). If she does, the inquiry at the third step

is whether any of these impairments meet one of the listings in

Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii).

To be found disabled based on a listing, the claimant's medically

determinable impairment must satisfy all of the criteria of the

relevant listing. 20 C.F.R. § 404.1525(c)(3); Sullivan v.

Zebley, 493 U.S. 521, 530 (1990); Otts v. Comm'r of Soc. Sec.,

249 F. App'x 887, 888 (2d Cir. 2007). If the claimant meets a

listing, the claimant is disabled. 20 C.F.R. §

404.1520(a)(4)(iii).

If the claimant does not meet any of the listings in

Appendix 1, step four requires an assessment of the claimant's

residual functional capacity ("RFC") and whether the claimant can

still perform her past relevant work given her RFC. 20 C.F.R.

§ 404.1520(a)(4)(iv); see Barnhart v. Thomas, supra, 540 U.S. at

24-25. If she cannot, then the fifth step requires assessment of

whether, given claimant's RFC, she can make an adjustment to

other work. 20 C.F.R. § 404.1520(a)(4)(v). If she cannot, she

will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v).

RFC is defined in the applicable regulations as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). To determine RFC, the ALJ "identif[ies] the individual's functional limitations or restrictions and assess[es] his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),(c), and (d) of 20 [C.F.R. §§] 404.1545 and 416.945." Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam), quoting Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 at *1 (July 2, 1996). The results of this assessment determine the claimant's ability to perform the exertional demands of sustained work which may be categorized as sedentary, light, medium, heavy or very heavy.[6] 20 C.F.R. § 404.1567; see Schaal v. Apfel, 134 F.3d 496, 501 n.6 (2d Cir. 1998). This ability may then be found to be limited further by nonexertional factors that restrict a claimant's ability to work.[7] See Michaels v. Colvin, 621 F.

---

[6]Exertional limitations are those which "affect [plaintiff's] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

[7]Nonexertional limitations are those which "affect only [plaintiff's] ability to meet the demands of jobs other than the strength demands," including difficulty functioning because of nervousness, anxiety or depression, maintaining attention or concentration, understanding or remembering detailed instructions, seeing or hearing, tolerating dust or fumes, or manipulative or postural functions, such as reaching, handling, stooping,
(continued...)

App'x 35, 38 n.4 (2d Cir. 2015) (summary order); <u>Zabala v.</u>
<u>Astrue</u>, 595 F.3d 402, 410 (2d Cir. 2010).

The claimant bears the initial burden of proving
disability with respect to the first four steps.  Once the
claimant has satisfied this burden, the burden shifts to the
Commissioner to prove the final step -- that the claimant's RFC
allows the claimant to perform some work other than her past
work.  <u>Selian v. Astrue</u>, <u>supra</u>, 708 F.3d at 418; <u>Burgess v.</u>
<u>Astrue</u>, <u>supra</u>, 537 F.3d at 128; <u>Butts v. Barnhart</u>, 388 F.3d 377,
383 (2d Cir. 2004), <u>amended in part on other grounds on reh'g</u>,
416 F.3d 101 (2d Cir. 2005).

In some cases, the Commissioner can rely exclusively on
the medical-vocational guidelines (the "Grids") contained in
C.F.R. Part 404, Subpart P, Appendix 2 when making the determina-
tion at the fifth step.  <u>Gray v. Chater</u>, 903 F. Supp. 293, 297-98
(N.D.N.Y. 1995).  "The Grid[s] take[] into account the claimant's
RFC in conjunction with the claimant's age, education and work
experience.  Based on these factors, the Grid[s] indicate[]
whether the claimant can engage in any other substantial gainful
work which exists in the national economy."  <u>Gray v. Chater</u>,

---

[7](...continued)
climbing, crawling or crouching.  20 C.F.R. § 404.1569a(c).

supra, 903 F. Supp. at 298; see Butts v. Barnhart, supra, 388 F.3d at 383.

Exclusive reliance on the Grids is not appropriate where nonexertional limitations "significantly diminish [a claimant's] ability to work." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986); accord Butts v. Barnhart, supra, 388 F.3d at 383. "Significantly diminish" means an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Bapp v. Bowen, supra, 802 F.2d at 606; accord Selian v. Astrue, supra, 708 F.3d at 421; Zabala v. Astrue, supra, 595 F.3d at 411. When the ALJ finds that the nonexertional limitations significantly diminish a claimant's ability to work, then the Commissioner must introduce the testimony of a vocational expert or other similar evidence in order to prove "that jobs exist in the economy which the claimant can obtain and perform." Butts v. Barnhart, supra, 388 F.3d at 383-84 (internal quotation marks and citation omitted); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983) ("If an individual's capabilities are not described accurately by a rule, the regulations make clear that the individual's particular limitations must be considered."). An ALJ may rely on a vocational expert's testimony in response to a hypothetical if there is

"substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983); accord Snyder v. Colvin, 667 F. App'x 319, 321 (2d Cir. 2016) (summary order) ("When the hypothetical posed to the vocational expert is based on a residual functional capacity finding that is supported by substantial evidence, the hypothetical is proper and the ALJ is entitled to rely on the vocational expert's testimony."); Rivera v. Colvin, 11 Civ. 7469, 2014 WL 3732317 at *40 (S.D.N.Y. July 28, 2014) (Swain, D.J.) ("Provided that the characteristics described in the hypothetical question accurately reflect the limitations and capabilities of the claimant and are based on substantial evidence in the record, the ALJ may then rely on the vocational expert's testimony regarding jobs that could be performed by a person with those characteristics.").

In addition to the five-step analysis outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments in 20 C.F.R. §§ 404.1520a (eff. June 13, 2011).[8]

_____

[8]The text of 20 C.F.R. § 404.1520a was amended as of January 17, 2017 and March 27, 2017. The regulations that were in effect at the time of the Commissioner's decision apply here. Accord Paredes v. Comm'r of Social Sec., 16 Civ. 810 (BCM), 2017 WL 2210865 at *11 n.13 (S.D.N.Y. May 19, 2017) (Moses, M.J.).

The regulations "require application of a 'special technique' at the second and third steps of the five-step framework" when evaluating the severity of mental impairments. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Schmidt v. Astrue, 496 F.3d 833, 844 (7th Cir. 2007)). This technique requires "the reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.' If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." Id. at 266 (citations omitted) (quoting 20 C.F.R. § 404.1520a). It is mandatory that the ALJ's written decision "reflect application of the technique"; "the decision 'must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" Id. at 266 (quoting 20 C.F.R. § 404.1520a(e)(4)).

Ornelas-Sanchez v. Colvin, 632 F. App'x 48, 49 (2d Cir. 2016) (summary order) (emphasis in original); accord Aung Winn v. Colvin, 541 F. App'x 67, 70 (2d Cir. 2013) (summary order); Petrie v. Astrue, 412 F. App'x 401, 408 (2d Cir. 2011) (summary order); Kohler v. Astrue, supra, 546 F.3d at 265-66.

### 3. Credibility

In determining a claimant's RFC, the ALJ is required to consider the claimant's reports of pain and other limitations, 20 C.F.R. § 404.1529, but is not required to accept the claimant's subjective complaints without question. McLaughlin v. Sec'y of

Health, Educ. & Welfare, 612 F.2d 701, 704-05 (2d Cir. 1980).
"It is the function of the [Commissioner], not [the reviewing
courts], to resolve evidentiary conflicts and to appraise the
credibility of witnesses, including the claimant." Carroll v.
Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983);
see also Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984);
Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588,
591-92 (2d Cir. 1984). The ALJ has discretion to assess the
credibility of the claimant's testimony in light of the medical
findings and other evidence in the record. Marcus v. Califano,
615 F.2d 23, 27 (2d Cir. 1979).

B.    The ALJ's
      Decision

    The ALJ applied the five-step analysis described above
and determined that plaintiff was not disabled (Tr. 13-31).

    At step one, the ALJ found that plaintiff had not
engaged in substantial gainful activity after March 22, 2012, the
alleged onset date (Tr. 15).

    At step two, the ALJ found that plaintiff suffered from
the following severe impairments:  tinnitus, diverticulosis and
degenerative disc disease of the cervical and lumbar spines (Tr.
15).  The ALJ found that plaintiff also suffered from the follow-
ing impairments but that they were non-severe:  obesity, carpal

25

tunnel syndrome, headaches and thyroid nodules as well as mental impairments of adjustment disorder with depressed mood and amnestic disorder, NOS (Tr. 16-17). With respect to plaintiff's mental impairments, the ALJ found that these impairments did not cause more than minimal limitations on plaintiff's ability to perform mental work activities and noted that plaintiff had not alleged a severe mental impairment until sometime after she filed her application for disability benefits (Tr. 16-17). The ALJ also considered the four broad functional areas set out in the regulations for evaluating mental impairments and found that plaintiff had mild limitations on the activities of daily living, social functioning and concentration, persistence or pace and had no episodes of decompensation (Tr. 18-19).

In coming to these conclusions, the ALJ reviewed the evidence of plaintiff's mental health treatment and assigned weight to the opinions in the medical record. The ALJ noted that plaintiff was treated by Dr. Halligan at the VA for severe depression and stress (Tr. 18). The ALJ noted that in September 2013, Dr. Halligan found that plaintiff was dysphoric, that her insight, judgment and impulse control were good and that her affect was within normal limits (Tr. 18). The ALJ also found that the record showed that plaintiff improved after starting on Prozac on October 23, 2013 (Tr. 18, 377, 388-89, 403). The ALJ

noted that the records showed that on November 18, 2013, plaintiff was starting to feel better, that on December 9, 2013, she was calm and had an appropriate mood and affect and that on February 24, 2014 and March 24, 2014 she was reported to be "doing well" on Prozac (Tr. 18). The ALJ gave "great weight" to the opinions of consulting examiner Dr. Helprin because his opinions supported the ALJ's conclusions that plaintiff's mental impairments were not severe and were "consistent with the records as a whole and [because Dr. Helprin was] an expert in Social Security disability evaluation" (Tr. 17). The ALJ also gave "great weight" to the opinion of the non-examining medical consultant, Dr. Hoffman, that plaintiff had mild limitations in the four broad functional areas specified for the evaluation of mental impairments (Tr. 17). In addition, the ALJ reviewed Dr. Larkin's treatment notes from October 2013, in which he diagnosed plaintiff with major depressive disorder and with a GAF score of 58 (Tr. 18). The ALJ gave "little weight" to the GAF rating because it was a "snap-shot opinion of the claimant's functioning at that particular time" and was inconsistent with plaintiff's mild limitations during other periods (Tr. 18).

At step three, the ALJ found that plaintiff's disabilities did not meet the criteria of the listed impairments and that

plaintiff was not, therefore, entitled to a presumption of disability (Tr. 20-21). 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then determined that plaintiff had the RFC to perform a full range of sedentary work except that

> she is able to able to lift/carry ten pounds occasion-ally and five pounds frequently; can sit for six hours in an eight hour workday; is able to stand for two hours in an eight hour workday; can walk for two hours in an eight hour workday; must have no upper or lower extremity push/pull activities; can occasionally bal-ance and stoop, but can never kneel, crouch, crawl, and climb stairs ramps, ladders, ropes, and scaffolds; can frequently perform overhead, distance, and directional reaching; can frequently use her hands bilaterally with manual dexterity, both fine and gross manipulation; and can have occasional exposure to background noise.

(Tr. 21).

The ALJ also considered plaintiff's testimony and found that while plaintiff's medically determinable impairments could reasonably have caused her alleged symptoms, a review of the entire case record showed that plaintiff's statements regarding their intensity, persistence and limiting effects were not entirely credible (Tr. 21-30). The ALJ found that plaintiff's "reported restrictions are not consistent with the preponderance of the medical evidence, as well as the claimant's testimony at the hearing" (Tr. 29).

At step four, the ALJ concluded that plaintiff was not disabled and was capable of performing her past relevant work, stating that

> [i]n comparing the claimant's residual functional
> capacity with the physical and mental demands of her
> past work, the Administrative Law Judge is convinced
> that the claimant can perform the duties of her past
> relevant work as an administrative control specialist
> under Dictionary of Occupational Titles (DOT) code
> 209.362-026 and medical transcriptionist under DOT code
> 203.582-058, as actually performed and normally per-
> formed in the national economy.

(Tr. 31). In reaching his conclusion, the ALJ relied on the
testimony of the VE at the hearing (Tr. 30-31).

### C. Analysis of the ALJ's Decision

Plaintiff argues that the ALJ erred in finding that her
mental impairments were not severe, that the ALJ erred in failing
to include plaintiff's mental impairments in the RFC finding and
that the ALJ's credibility finding was flawed (Memorandum of Law
in Support of the Plaintiff's Motion for Judgment on the Plead-
ings, dated July 21, 2017 (D.I. 20) ("Pl. Mem.")). The Commis-
sioner contends that the ALJ's decision was supported by substan-
tial evidence, free from legal error and should be affirmed
(Memorandum of Law in Support of Judgment on the Pleadings, dated
October 3, 2017 (D.I. 24) ("Def. Mem.")).

1.  Assessment of the Severity of
    Plaintiff's Mental Impairments at Step Two

The ALJ's finding that plaintiff did not have a severe
mental impairment was supported by substantial evidence and was
based on the correct application of the applicable legal stan-
dards.  After finding that plaintiff had the medically determina-
ble impairments of adjustment disorder with depressed mood and
amnestic disorder, NOS, the ALJ then applied the required special
technique for the evaluation of mental impairments and deter-
mined, based on substantial evidence, that plaintiff had no more
than mild limitations in the four functional areas.

Plaintiff's argument that Dr. Helprin's opinion that
plaintiff had moderate memory deficits compelled the ALJ to find
that plaintiff's mental impairments were severe is not supported
by the record (Pl. Mem. at 10-13).  Although plaintiff does not
identify which functional areas the ALJ should have found to be
more seriously impaired based on Dr. Helprin's finding of moder-
ate memory limitations,[9] a review of each finding shows that the

_____

[9]Plaintiff argues that

> [t]o be clear, Plaintiff does not argue that Dr.
> Helprin's opinion establishes more than mild
> limitations in all areas, but the opinion regarding
> short-term memory defects, which plainly implicates the
> higher level of tasks associated with Plaintiff's past
> skilled and semi-skilled work, plainly does not support
> (continued...)

ALJ's conclusions were actually supported by Dr. Helprin's findings and the overall record.

With respect to the first functional area, activities of daily living, plaintiff reported to Dr. Helprin that she needed some help with money management due to memory issues, had "okay" family relationships and did not socialize with friends in person (Tr. 293). Dr. Helprin concluded that plaintiff's psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis" and that plaintiff could manage her own funds (Tr. 293-94). Dr. Helprin's opinion is therefore consistent with the ALJ's conclusion that plaintiff had mild limitations in the first functional area.

With respect to the second area, social functioning, Dr. Helprin found that plaintiff could "relate adequately" to others and had a "mild" limitations in the ability to deal with stress (Tr. 293). Thus, the ALJ's conclusion, that plaintiff had mild limitations in social functioning is also supported by Dr. Helprin's opinion.

With respect to the third functional area, the ALJ acknowledged that Dr. Helprin's opinion that plaintiff had

---

[9](...continued)
    the "nonsevere" finding.

(Pl. Mem. at 13 (emphasis in original)).

"moderate short-term memory limitations" may affect plaintiff's ability to maintain concentration, persistence, or pace (Tr. 19, 293). The ALJ concluded, however, that Dr. Helprin's other opinions and the overall record demonstrated that plaintiff's limitations in this area were mild. In the listings, "concentrate, persist, or maintain pace" is defined as

> the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning.

20 C.F.R. Part 404, Subpart P, § 12.00(E)(3). With respect to these areas, Dr. Helprin opined that plaintiff could "follow and understand simple directions and instructions, cognitively perform simple tasks and complex tasks independently, and maintain attention and concentration, though with moderate short-term memory limitations" (Tr. 293). Dr. Helprin also found that plaintiff would have "no limitations in her ability to maintain a regular schedule as it pertains to psychiatric and cognitive outlooks" (Tr. 293). Therefore, with the exception of plaintiff's moderate short-term memory limitations, Dr. Helprin found

32

that plaintiff had either mild or no limitations in areas of functioning that relate to concentration, persistence, or pace. Moreover, in August, September and October 2013, plaintiff's doctors found that her memory was either "normal" or "grossly intact" (Tr. 346, 416, 427, 434). Given these conclusions, it was not erroneous for the ALJ to conclude that Dr. Helprin's opinion and the record as a whole was consistent with a finding that plaintiff had mild restrictions in concentration, persistence or pace (Tr. 19).

With respect to the fourth area, plaintiff does not dispute the ALJ's conclusion that plaintiff had not experienced any episodes of decompensation (Tr. 19).

Further, the ALJ did not improperly substitute his opinion for that of a medical professional in finding that plaintiff's psychiatric impairments were not severe. The ALJ gave Dr. Helprin's opinion, that of a consulting source, "great" but not "controlling," weight. Even if Dr. Helprin's opinion could be interpreted to constitute a finding that plaintiff had a severe impairment, he was not a treating source whose opinion was entitled to controlling weight,[10] and he was not the only doctor

---

[10]Under the regulations in effect at the time of the ALJ's decision here, the ALJ was required to provide good reasons for providing a treating physician's opinion less than controlling weight. 20 C.F.R. § 404.1527(c)(2). The Social Security
(continued...)

to give an opinion.  The ALJ also gave great weight to the opinion of medical consultant Dr. Hoffman that plaintiff had only mild limitations in the activities of daily living, maintaining social functioning and in her ability to maintain concentration, persistence, or pace and that she had suffered no episodes of decompensation (Tr. 17).  Dr. Hoffman based this opinion on a review of the medical records that were available as of October 9, 2013, including Dr. Helprin's report (Tr. 76-81).

Further, the medical record from plaintiff's treating physicians supported the ALJ's finding that plaintiff's mental impairments were not severe and that her psychological condition improved with treatment during the relevant period.  On September 26, 2013, during plaintiff's first post-retirement visit for treatment of depression, Dr. Halligan found that plaintiff scored in the severely depressed range on a PHQ-9 questionnaire and recommended that plaintiff meet with a psychopharmacologist to discuss medication for depression (Tr. 360-61).  On October 2, 2013, before plaintiff started taking medication, Dr. Helprin diagnosed plaintiff with an adjustment disorder with depressed

---

[10](...continued)
Administration recently adopted regulations that change the standards applicable to the review of medical opinion evidence for claims filed on or after March 27, 2017.  See 20 C.F.R. § 404.1520c.  Because plaintiff's claim was filed before that date, those amended regulations do not apply here.

mood that was "moderate" and "episodic" (Tr. 293-94). On October 23, 2013, Dr. Larkin assessed plaintiff with a GAF score of 58, indicating moderate symptoms (Tr. 346-47). Dr. Larkin examined plaintiff and found that she was cooperative, calm and had no suicidal ideations, but that she was "depressed" and "mildly anxious" (Tr. 346-47). Dr. Larkin prescribed Prozac (Tr. 346-47). On November 18, 2013, less than two months after Dr. Halligan diagnosed plaintiff with "severe" depression, plaintiff told Dr. Reich that she was beginning to feel better after starting Prozac and as a result of psychological counseling (Tr. 401-03). On December 2, 2013, Dr. Reich noted that plaintiff was under "excessive amounts of stress," was on Prozac and would continue with treatment with a psychiatrist (Tr. 399). On February 24, 2014, Dr. Reich found that plaintiff's judgment, insight and mood were normal, that she was not depressed or anxious, that she was still taking Prozac and seemed to be doing well (Tr. 388-89). In March 2014, Dr. Reich again noted plaintiff was "on Prozac and [was] doing well" (Tr. 377). Thus, the ALJ correctly found that plaintiff's mental impairments improved with therapy and medication.

Plaintiff's own account of her mental health also indicated that she had almost no limitations in her ability to function on a daily basis as a result of her mental health

issues. Plaintiff reported to the Social Security Administration that she did not have trouble paying attention, did not need reminders to take her medication, could count change, could handle a savings account and could handle money (Tr. 18-19, 178-84). Although plaintiff stated that she did not socialize with friends in person, she lived with her family, she had no problems getting along with others and talked on the telephone with her mother, grandmother and her best friend (Tr. 181, 293). Although plaintiff told Dr. Helprin in October 2013 that she sometimes forgot to pay her bills, one month earlier, she had reported to the Social Security Administration that she had no trouble remembering things or handling bills (Tr. 180-84, 293). Plaintiff's own account of her daily functioning, therefore, did not support a finding that she suffered from a severe mental impairment.

Based on this evidence, the ALJ properly found that plaintiff did not have a severe mental health impairment that "has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

### 2. RFC Analysis

Although the ALJ's finding that plaintiff's mental impairments were not severe was supported by the record, the ALJ

did err in failing to consider plaintiff's mental impairments in determining plaintiff's RFC and in the hypothetical posed to the vocational expert. As noted above, the ALJ concluded that plaintiff had a medically determinable impairment of an adjustment disorder with depressed mood and amnestic disorder NOS (Tr. 16-17). However, the ALJ's RFC finding, which was the basis for the hypothetical to the vocational expert, did not include any mental limitations, and the ALJ does not offer any explanation for omitting those mental impairments from his RFC finding (Tr. 21). Thus, the ALJ committed reversible legal error by failing to consider plaintiff's non-severe mental impairments in determining her RFC and ability to do her past work.

Even where "substantial evidence supports the ALJ's finding that [a claimant's] mental impairment was nonsevere, it would still be necessary to remand . . . for further consideration [where] the ALJ failed to account [for the claimant's] mental limitations when determining her RFC." Parker-Grose v. Astrue, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order), citing, inter alia, 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe [ ]' . . . when we assess your [RFC] . . . ."); see Schmidt v. Colvin, 15-CV-2692 (MKB), 2016 WL 4435218 at *13

(E.D.N.Y. Aug. 19, 2016) ("Because the ALJ failed to account for the limitations imposed by Plaintiff's non-severe mental impairments, the Court remands for consideration of those limitations in determining Plaintiff's RFC."); Jackson v. Colvin, No. 1:14-CV-00055 (MAT), 2016 WL 1578748 at *4 (W.D.N.Y. Apr. 20, 2016) ("[T]he ALJ failed to properly consider [the] plaintiff's mental impairments, whether severe or non-severe, throughout the entire five-step sequential evaluation.  As a result, the ALJ's RFC finding was not supported by substantial evidence."); Rookey v. Comm'r of Soc. Sec., No. 7:14-cv-914 (GLS), 2015 WL 5709216 at *3 (N.D.N.Y. Sept. 29, 2015) (reversing and remanding where the ALJ "fail[ed] to consider [the plaintiff's] non-severe mental impairments in determining his RFC"); Salisbury v. Colvin, 13 Civ. 2805 (VEC)(MHD), 2015 WL 5458816 at *44 (S.D.N.Y. Sept. 1, 2015) (Dolinger, M.J.) (Report & Recommendation) ("the ALJ erred by not considering whether and to what degree plaintiff's mental impairments may affect his RFC, however slightly."), adopted at 2015 WL 5566275 (S.D.N.Y. Sept. 21, 2015) (Caproni, D.J.); Johnson v. Colvin, No. 12-CV-1273 (GLS), 2013 WL 6145804 at *5 (N.D.N.Y. Nov. 21, 2013) (remanding because "failure to consider [the plaintiff's] mental impairments and abilities in assessing her RFC is legal error"); Dixon v. Astrue, Civil No. 10-5703 (RBK), 2011 WL 4478493 at *12 (D.N.J. Sept. 26, 2011) ("[T]he ALJ

38

properly evaluated Plaintiff's depression to determine that it was not severe" but erred in omitting it from his RFC determination without explanation).

Here, the ALJ made two references to plaintiff's psychological condition in discussing her RFC but did not explain how the RFC finding included consideration of plaintiff's non-severe mental impairments. The ALJ concluded the RFC analysis by stating that it was supported by "the lack of consistent psychiatric treatment" (Tr. 29). The ALJ also stated that in finding that plaintiff was not disabled, he had compared plaintiff's RFC with the "physical and mental demands of her past work" (Tr. 31). These statements do not explain whether the ALJ considered plaintiff's mental limitations in his RFC analysis, and if not, what the ALJ's reasoning was for that omission. See Dixon v. Astrue, supra, 2011 WL 4478493 at *12 ("the ALJ's failure to either consider Plaintiff's depression in evaluating her RFC or to offer a reason for discounting it was unsupported by substantial evidence"). For instance, the ALJ does not indicate why he concluded that plaintiff's amnestic disorder, NOS did not affect the mental demands of her past semi-skilled and skilled work. The Social Security Administration has noted that "[u]nderstanding, remembering, and carrying out simple instructions" is required even for unskilled sedentary work. SSR 96-9p,

1996 WL 374185 at *9 (S.S.A. July 2, 1996). Thus, on the current record the ALJ's failure either to consider plaintiff's non-severe mental impairments in evaluating her RFC or to explain why they need not be considered constituted legal error.

In addition, the ALJ erred when he failed to include plaintiff's mental impairments in the hypothetical to the vocational expert, who was in a better position to assess the mental demands of plaintiff's past work in relation to her current RFC. In McIntyre v. Colvin, 758 F.3d 146, 151-52 (2d Cir. 2014), the Court of Appeals held that "the [Commissioner] must evaluate [the] combined impact [of a claimant's impairments] on a claimant's ability to work, regardless of whether every impairment is severe" and that "an ALJ's hypothetical [to a vocational expert] should explicitly incorporate any limitations in concentration, persistence, and pace." (citation omitted). Here, none of the hypothetical limitations that the ALJ posed to the vocational expert asked him to assume non-severe mental impairments including mild limitations in concentration, persistence or pace (Tr. 67-73). Plaintiff's non-severe anxiety and memory impairments may have affected the vocational expert's conclusion that plaintiff could do her past skilled and semi-skilled sedentary work. See SSR 96-9p, 1996 WL 374185 at *9 (S.S.A. July 2, 1996) ("[w]hen an individual has been found to have a limited ability

in [understanding, remembering or carrying out simple instruc-
tions,] it may be useful to consult a vocational resource"
(emphasis added)); see also Dixon v. Astrue, supra, 2011 WL
4478493 at *12 (although plaintiff's depression was not severe,
ALJ erred in failing to include any depression-related impair-
ments in the hypothetical posed to vocational expert).

        Contrary to the Commissioner's argument, McIntyre v.
Colvin, supra, 758 F.3d at 150, does not warrant a finding that
the ALJ's error is harmless in this case (Def. Mem. at 18-19).
There, the Court of Appeals held that the ALJ's failure to
explicitly incorporate a claimant's non-exertional limitations in
concentration, persistence or pace in the RFC analysis and in the
hypothetical to the vocational expert was harmless.  The court
held

> that an ALJ's failure to incorporate non-exertional
> limitations in a hypothetical (that is otherwise sup-
> ported by evidence in the record) is harmless error if
> (1) "medical evidence demonstrates that a claimant can
> engage in simple, routine tasks or unskilled work
> despite limitations in concentration, persistence, and
> pace," and the challenged hypothetical is limited "to
> include only unskilled work"; or (2) the hypothetical
> "otherwise implicitly account[ed] for a claimant's
> limitations in concentration, persistence, and pace[.]"

McIntyre v. Colvin, supra, 758 F.3d at 152 (citation omitted).
Thus, because the ALJ in McIntyre explicitly limited his hypo-
thetical to "simple, routine, low stress tasks," the Court of
Appeals found that substantial evidence supported the conclusion

that the claimant could do such work.  McIntyre v. Colvin, supra,
758 F.3d at 152.  Unlike the ALJ in McIntyre, the ALJ here did
not limit his hypothetical to "simple, routine, low stress
tasks."  The Commissioner has not explained how the ALJ's RFC
finding or the hypothetical otherwise accounted for plaintiff's
mental health limitations.

The Commissioner's reliance on Akey v. Astrue, 467 F.
App'x 15, 17 (2d Cir. 2012) (summary order) for the proposition
that the ALJ need not address plaintiff's mental functional
limitations in the RFC analysis is also misplaced (Def. Mem. at
18).  In Akey, the Court of Appeals stated that "substantial
evidence supports the ALJ's determination that Akey was intellec-
tually capable of performing unskilled and semi-skilled work and
that he suffered no other mental functional limitations for work"
and that the ALJ did not err in discounting a nurse practitio-
ner's opinion that plaintiff had a "marked limitation" in dealing
with work stress.  Akey v. Astrue, supra, 467 F. App'x at 17.
There is nothing in the opinion that indicates that the ALJ
omitted plaintiff's mental limitations in the RFC determination.
To the contrary, the Court's reference to the ALJ's determination
that plaintiff had the intellectual capacity to perform unskilled
and semi-skilled work suggests that the ALJ actually did consider
plaintiff's mental limitation in his RFC determination.

Therefore, because the ALJ failed to account for the limitations imposed by plaintiff's non-severe mental impairments, remand is required for reconsideration of plaintiff's RFC and if necessary, further testimony from a vocational expert.

### 3. Credibility

Plaintiff's credibility argument is far from clear. After acknowledging that the regulations define the factors that the ALJ must consider in assessing credibility, plaintiff states that her "argument with respect to the ALJ's failure to properly evaluate Plaintiff's impairments, naturally, is also an attack on the ALJ's credibility finding" (Pl. Mem. at 16). The ALJ, however appears to have meticulously followed the regulations applicable to credibility determinations.

The regulations provide a two-step process for evaluating a claimant's subjective assertions of disability.

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). That requirement stems from the fact that subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). If the claimant does suffer from such an impairment, at the second step, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. Id. The ALJ must consider "[s]tatements [the claimant] or others make about [the claimant's] impairment(s), [the claimant's] restrictions, [the claim-

43

ant's] daily activities, [the claimant's] efforts to
work, or any other relevant statements [the claimant]
make[s] to medical sources during the course of exami-
nation or treatment, or to [the agency] during inter-
views, on applications, in letters, and in testimony in
[its] administrative proceedings." 20 C.F.R. §
404.1512(b)(3); see also 20 C.F.R. § 404.1529(a);
S.S.R. 96-7p.

Genier v. Astrue, supra, 606 F.3d at 49 (alterations and emphasis

in original); see also Snyder v. Colvin, 667 F. App'x 319, 320

(2d Cir. 2016) (summary order), citing SSR 16-3P, 2016 WL 1119029

(Mar. 16, 2016).[11] The ALJ must explain the decision to reject a

claimant's testimony "'with sufficient specificity to enable the

[reviewing] Court to decide whether there are legitimate reasons

for the ALJ's disbelief' and whether [the ALJ's] decision is

supported by substantial evidence." Calzada v. Astrue, 753 F.

Supp. 2d 250, 280 (S.D.N.Y. 2010) (Sullivan, D.J.) (alteration in

original), quoting Fox v. Astrue, 05 Civ. 1599 (NAM)(DRH), 2008

WL 828078 at *12 (N.D.N.Y. Mar. 26, 2008); see also Lugo v.

Apfel, 20 F. Supp. 2d 662, 664 (S.D.N.Y. 1998) (Rakoff, D.J.).

The ALJ's determination of credibility is entitled to deference.

See Snell v. Apfel, 177 F.3d 128, 135-36 (2d Cir. 1999) ("After

all, the ALJ is in a better position to decide issues of credi-

bility"); Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6

---

[11]SSR 16-3p supersedes SSR 96-7p, 1996 WL 362209 (July 2,
1996), and clarifies the policies set forth in the previous SSR.
See SSR 16-3P, supra, 2016 WL 1237954.

(S.D.N.Y. 1995) (Leisure, D.J.) ("Deference should be accorded the ALJ's determination because he heard Plaintiff's testimony and observed his demeanor.").

Here, the ALJ expressly acknowledged the applicability of the two-step process described above (Tr. 21) and followed it precisely. At the first step, the ALJ found that in addition to certain physical impairments, plaintiff had the mental impairments of adjustment disorder with depressed mood and amnestic disorder, NOS (Tr. 16-17). As discussed above, in applying the special technique for the evaluation of mental impairments, the ALJ considered plaintiff's testimony and reports to her doctors related to the four factors in the special technique (see Tr. 17-20). To the extent plaintiff has challenged the ALJ's application of the special technique, those arguments were addressed above in Section (III)(C)(1). Later, in discussing plaintiff's physical impairments, the ALJ considered the statements plaintiff made in a disability questionnaire submitted to the Social Security Administration, her statements to her doctors and her testimony at the hearing (Tr. 21-29). The ALJ found that plaintiff's allegations of disabling physical limitations were not consistent with the medical evidence or her testimony at the hearing (Tr. 29).

Plaintiff's only challenge to the ALJ's credibility finding is that it is "generally flawed" because the ALJ failed to "acknowledge Plaintiff's strong work history" (Pl. Mem. at 16). "Although it is true that a good work history may be deemed probative of credibility, it remains just one of many factors appropriately considered in assessing credibility." Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (summary order) (citation and internal quotation marks omitted). Further, the failure to specifically reference plaintiff's good work history "does not undermine the credibility assessment [if there is] substantial evidence supporting the ALJ's [credibility] determination." Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order). It is clear from the record that the ALJ was aware of plaintiff's work history because he asked her about it at the hearing and relied on it in his disability determination (Tr. 17, 24, 28, 45-52). Cf. Wavercak v. Astrue, supra, 420 F. App'x at 94 (noting that, although the ALJ did not reference the claimant's work history in the credibility analysis, "the ALJ was well-aware of [his] 17-year employment . . . and considered this in the disability analysis when he concluded that [his] RFC for light work prevented him from performing the medium demands of his past [work]."). Plaintiff has not argued that the credibility determination is not otherwise supported by substantial

evidence and has not cited any authority for the proposition that an ALJ's failure to reference expressly work history alone is grounds for remand. Therefore, although the matter will be remanded for a reassessment of plaintiff's RFC, plaintiff has not identified any error in the ALJ's credibility finding that provides an independent basis for remand.

## IV.  Conclusion

Accordingly, for all the foregoing reasons, plaintiff's motion for judgment on the pleadings (D.I. 19) is granted to the extent of ordering that this matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). The Commissioner's motion for judgment on the pleadings (D.I. 23) is denied.

Dated:  New York, New York
        January 11, 2018

                              SO ORDERED,

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies transmitted to:

Counsel of Record